UNITED STATES *v.* JOHNSON ET AL., DOING BUSINESS AS UNITED STATES DENTAL CO., ET AL.

No. 43.   Argued November 8, 1944.—Decided December 18, 1944.

*Mr. W. Marvin Smith,* with whom *Solicitor General Fahy* and *Assistant Attorney General Tom C. Clark* were on the brief, for the United States.

*Mr. H. Albert Young,* with whom *Mr. Alexander Jamison* was on the brief, for appellees.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This case concerns the construction of the Federal Denture Act of 1942, 56 Stat. 1087, 18 U. S. C. § 420 (f) (g)

(h) (Supp. 1943), which provides that ". . . it shall be unlawful, in the course of the conduct of a business of constructing or supplying dentures from casts or impressions sent through the mails or in interstate commerce, to use the mails or any instrumentality of interstate commerce for the purpose of sending or bringing into . . ." a State or Territory any denture the cast of which was taken by a person not licensed to practice dentistry in the State into which the denture is sent. An information, filed October 4, 1943, in the District Court for the District of Delaware, charged that appellees put into the mails at Chicago for delivery in Houston, Delaware, dentures in violation of the Delaware laws pertaining to dental practice, and thereby violated the Federal Denture Act. The information was quashed on the ground that prosecution of appellees could only be had where the illegal dentures were deposited. 53 F. Supp. 596. A second information, adding counts alleging transmission into and delivery in Delaware, was quashed by entry of a formal order referring to the court's earlier opinion.[1] The Government has appealed directly to this Court under the Criminal Appeals Act. 34 Stat. 1246, as amended, 18 U. S. C. § 682 (Supp. 1943).

Must these appellees be tried in the Northern district of Illinois or may they be tried in the district of any State through which the dentures were carried including Delaware, the place of delivery? Has Congress authorized such discretion in the enforcement of this Act? If it has, there is an end to the matter, for Congress may constitutionally make the practices which led to the Federal Denture Act triable in any federal district through which an offending denture is transported. *Armour Packing Co.* v.

---

[1] We are concerned only with this latter information, but the court's opinion, delivered in connection with the first information, gave its reasons for quashing both informations.

*United States,* 209 U. S. 56. An accused is so triable, if a fair reading of the Act requires it. But if the enactment reasonably permits the trial of the sender of outlawed dentures to be confined to the district of sending, and that of the importer to the district into which they are brought, such construction should be placed upon the Act. Such construction, while not required by the compulsions of Article III, § 2 of the Constitution and of the Sixth Amendment, is more consonant with the considerations of historic experience and policy which underlie those safeguards in the Constitution regarding the trial of crimes.

Aware of the unfairness and hardship to which trial in an environment alien to the accused exposes him, the Framers wrote into the Constitution that "The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed . . ." Article III, § 2, cl. 3. As though to underscore the importance of this safeguard, it was reinforced by the provision of the Bill of Rights requiring trial "by an impartial jury of the State and district wherein the crime shall have been committed." Sixth Amendment. By utilizing the doctrine of a continuing offense, Congress may, to be sure, provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates. Thus, an illegal use of the mails or of other instruments of commerce may subject the user to prosecution in the district where he sent the goods, or in the district of their arrival, or in any intervening district. Plainly enough, such leeway not only opens the door to needless hardship to an accused by prosecution remote from home and from appropriate facilities for defense. It also leads to the appearance of abuses, if not to abuses, in the selection of what may be deemed a tribunal favorable to the prosecution.

These are matters that touch closely the fair administration of criminal justice and public confidence in it, on which it ultimately rests. These are important factors in any consideration of the effective enforcement of the criminal law. They have been adverted to, from time to time, by eminent judges; and Congress has not been unmindful of them. Questions of venue in criminal cases, therefore, are not merely matters of formal legal procedure. They raise deep issues of public policy in the light of which legislation must be construed. If an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it.

It is significant that when Congress desires to give a choice of trial, it does so by specific venue provisions giving jurisdiction to prosecute in any criminal court of the United States through which a process of wrongdoing moves. Such was the situation in *Armour Packing Co.* v. *United States, supra.* The offense there was under the Elkins Act for the transportation of goods at illegal freight rates, and Congress specifically provided for prosecution in any district "through which the transportation may have been conducted." 32 Stat. 847, as amended, 49 U. S. C. § 41 (1).

In the Federal Denture Act Congress did not make provision for trial in any district through which the goods were shipped. The absence of such a provision would in itself be significant. Its significance is enhanced when it appears that the attention of Congress was directed by the Postmaster General to the desirability of authority for a discretionary trial either at the place of shipment or at the place of receipt. He wrote to the Chairman of the House Committee on Interstate and Foreign Commerce "that consideration should be given to the advisability of having

the measure provide for prosecution of violators in the jurisdiction where the material is caused to be delivered as well as in the jurisdiction from which it is sent." Hearings before Subcommittee of House Committee on Interstate and Foreign Commerce on H. R. 5674, 77th Cong., 2d Sess. (1942) p. 3. And the Committee also invited the viewpoint of representatives of the Department of Justice "on the language of the bill." *Id.* at 28. In view of the keen awareness of enforcing officials as well as that of the members of the Committee on Interstate Commerce of the problems raised by venue in criminal trials, it is inadmissible to suggest either oversight on the part of Congress in failing to make provision for choice of venue or to make the cavalier assumption that that which is specifically provided for in other enactments—*i. e.,* trial in more than one district—was authorized but through parsimony of language left unexpressed in the Federal Denture Act.

The absence of a venue provision such as that which Congress wrote into the Elkins Act is far more rationally explained by due regard to the difference between the offenses under the Elkins and the Federal Denture Acts respectively. The venue provision under the Elkins Act underlines the offense defined by that Act, which was not the illegal sending or the bringing of goods but their "transportation." That—transportation—is inescapably a process, a continuing phenomenon. The Federal Denture Act did not make "transportation" the offense. It proscribed the use of the mails for "the purpose of sending or bringing into any State" unlawful dentures. The Act thereby hit two types of violators—the sender and the unlicensed dentist who brings in dentures from without. It is a reasonable and not a strained construction to read the statute to mean that the crime of the sender is complete when he uses the mails in Chicago, and the crime of the unlicensed dentist in California or Florida or Delaware, who orders the dentures from Chicago, is committed in the

State into which he brings the dentures. As a result, the trial of the sender is restricted to Illinois and that of the unlicensed dentist to Delaware or Florida or California. The illicit sender in Chicago cannot be hauled for trial across the continent, and, conversely, the unlicensed dentist cannot be compelled to stand trial in Chicago.

The large policy back of the constitutional safeguards counsels against the unrestricted construction for which the Government contends when Congress has not commanded it; and no considerations of expediency require it. Prosecutions of federal crimes are under the general supervision of the Attorney General of the United States; United States Attorneys do not exercise autonomous authority. The vindication of the Federal Denture Act therefore does not depend upon the willingness of some local United States Attorney to prosecute on behalf of a local victim. While it might facilitate the Government's prosecution in a case like this to have its witnesses near the place of trial, there must be balanced against the inconvenience of transporting the Government's witnesses to trial at the place of the sender the serious hardship of defending prosecutions in places remote from home (including the accused's difficulties, financial and otherwise, see R. S. § 878, 28 U. S. C. § 656, of marshalling his witnesses), as well as the temptation to abuses, already referred to, in the administration of criminal justice. Inasmuch as the statute permits and does not forbid this construction, the judgment below should be affirmed.

*Affirmed.*

Mr. Justice Murphy, concurring.

I join in the opinion of the Court and believe that the judgment should be affirmed.

Congress has the constitutional power to fix venue at any place where a crime occurs. Our problem here is to

determine, in the absence of a specific venue provision, where the crime outlawed by the Federal Denture Act occurred for purposes of venue.

The Act prohibits the use of the mails for the purpose of sending or bringing into any state certain prohibited articles. It is undisputed that when a defendant places a prohibited article in the mails in Illinois for the purpose of sending it into Delaware he has completed a statutory offense. Hence he is triable in Illinois. But to hold that the statutory crime also encompasses the receipt of the prohibited article in Delaware, justifying a trial at that point, requires an implication that I am unwilling to make in the absence of more explicit Congressional language.

Very often the difference between liberty and imprisonment in cases where the direct evidence offered by the government and the defendant is evenly balanced depends upon the presence of character witnesses. The defendant is more likely to obtain their presence in the district of his residence, which in this instance is usually the place where the prohibited article is mailed. The inconvenience, expense and loss of time involved in transplanting these witnesses to testify in trials far removed from their homes are often too great to warrant their use. Moreover, they are likely to lose much of their effectiveness before a distant jury that knows nothing of their reputations. Such factors make it difficult for me to conclude, where Congress has not said so specifically, that we should construe the Federal Denture Act as covering more than the first sufficient and punishable use of the mails insofar as the sender of a prohibited article is concerned. The principle of narrow construction of criminal statutes does not warrant interpreting the "use" of the mails to cover all possible uses in light of the foregoing considerations.

MR. JUSTICE REED, dissenting.

The statute under consideration condemns the "use" of "the mails or any instrumentality of interstate commerce for the purpose of sending or bringing into any State or Territory" any denture which has been made without compliance with the laws of that State or Territory, relating to the furnishing of such appliances. The Court narrowly interprets the term "use" to condemn as criminal only the first use of the mails; in this way the Court restricts venue for prosecution to Illinois for trial of an offender who mails a denture in Illinois which is subsequently delivered through "use" of the mails in Delaware. We think, however, that the statute condemns and makes criminal any use of the mails for the prohibited purpose. Under this interpretation the appellees' use of the mails is punishable in Delaware and the dismissal of the information in this case should be reversed.

The venue of a crime may be fixed at any place where the acts denounced as crimes occur.[1] There is no disagreement as to this rule of law. The Court reaches its conclusion upon venue under the Federal Denture Act not upon any compulsion of Constitution or statute but because a restriction of the venue to the place of mailing seemed to it more consonant with the underlying purposes of the Constitutional provisions as to venue. These purposes are thought, as the Court expresses it, to include a trial in an environment which is not alien to the accused.

We think the Court misapprehends the purpose of the Constitutional provisions. We understand them to as-

---

[1] Constitution of the United States, Art. III, § 2, cl. 3; Sixth Amendment. *Armour Packing Co.* v. *United States,* 209 U. S. 56, 73–77; *Salinger* v. *Loisel,* 265 U. S. 224, 232–235; *Horner* v. *United States,* No. 1, 143 U. S. 207, 213; *In re Palliser,* 136 U. S. 257, 265; *Hyde* v. *Shine,* 199 U. S. 62, 78; *Haas* v. *Henkel,* 216 U. S. 462, 473.

sure a trial in the place where the crime is committed and not to be concerned with the domicile of the criminal nor with his familiarity with the environment of the place of trial. *Haas* v. *Henkel,* 216 U. S. 462. Indeed in the present information nothing appears as to residence or domicile of the accused or as to their place of business.

Congress by its specification of the precise acts denounced as crimes fixes venue at the place where those acts are committed. Our inquiry, then, must be directed to a determination of what constitutes the crime denounced by the Denture Act. The statute condemns as unlawful the "use" of the "mails or any instrumentality of interstate commerce for the purpose of sending or bringing into any State" the prohibited dentures. It is not the deposit of the article or its delivery which is forbidden but the use of the transportation facilities. The sending or bringing of the dentures is not denounced as a substantive crime apart from the use of mails or instrumentalities to accomplish the purpose. The crime consists of the use of the mails to send a prohibited denture "into" or bring it "into" another state. The language leads us to the conclusion that a use for the prohibited purpose occurs at whatever place the proscribed denture is handled by the mails or an instrumentality of commerce.

The "use" for the "purpose" results in a continuous offense.[2] Since the offense is committed wherever the mails or the instrumentalities of interstate commerce are used for the purpose of sending or bringing the denture into a state contrary to the statute and the act has no provision otherwise limiting the place of trial, the venue is at what-

---

[2] Cf. *United States* v. *Kissel,* 218 U. S. 601; *Hyde* v. *United States,* 225 U. S. 347, 360–67; *United States* v. *Socony-Vacuum Oil Co.,* 310 U. S. 150, 250; *In re Snow,* 120 U. S. 274; Clark & Marshall, Crimes (4th Ed.), § 504 (d); Wharton Criminal Law (12th Ed.), § 338. See also *In re Richter,* 100 F. 295, 298; *Morris* v. *United States,* 229 F. 516, 521.

ever place these acts are committed. One of the places in the present case is Delaware "into" which the dentures were brought by appellees' use of the mails in that state.[3] If this analysis is correct, there was no occasion for Congress to follow the suggestion as to venue of the Postmaster General to which the Court refers.

The title of the act indicates that it is directed at practices thought to lead to dental disorders and "to prevent the circumvention of certain State or Territorial laws regulating the practice of dentistry." 56 Stat. 1087. These state laws regulated the fabrication of prosthetic dental appliances. From the hearings[4] it is clear that the purpose of Congress was to protect the public against the evils of ill-fitting dental appliances by restricting interstate commerce to dental appliances which were approved by licensed practitioners of the state into which the appliances were brought. Such was declared to be its purpose by the report of the Senate Committee. S. Rep. No. 1779, 77th Cong., 2d Sess., p. 1. As the injury would occur normally at the place of delivery and as the act is designed to protect only those states which have laws regulating the furnishing of appliances by unlicensed practitioners, Congress would naturally enact legislation which might punish violations in the state of delivery.

---

[3] Cf. *Armour Packing Co.* v. *United States*, 209 U. S. 56, 72–74; *United States* v. *Midstate Co.*, 306 U. S. 161, 165; and see *United States* v. *Lombardo*, 241 U. S. 73, 77; *United States* v. *Freeman*, 239 U. S. 117, and *In re Palliser*, 136 U. S. 257. The latter two cases illustrate the difference between a continuous offense and one begun in one state and completed in another. Compare Judicial Code, § 42, 28 U. S. C. § 103, with § 3237 of H. R. 5450, 78th Cong., 2d Sess.

[4] Hearing before a Subcommittee of the House Committee on Interstate and Foreign Commerce, February 3 and 4, 1942, 77th Cong., 2d Sess., on H. R. 5674; Hearing before a Subcommittee of the Senate Committee on Interstate Commerce, July 15, 16, 17 and 20, 1942, 77th Cong., 2d Sess., on S. 2371.

The prosecuting officers of that state would be most interested in enforcement and would best understand the scope of the laws of the state of delivery. · Congress would not wish to leave immune shipments from foreign countries. Cf. *United States* v. *Freeman,* 239 U. S. 117.

The CHIEF JUSTICE, MR. JUSTICE DOUGLAS and MR. JUSTICE RUTLEDGE join in this dissent.