"Very truly yours,
"(signed) Norman P. Ramsey
"Norman P. Ramsey
"Asst. Attorney General"

UNITED STATES of America,

v.

Edward Eugene SANCHEZ, Defendant.

United States District Court
S. D. New York.

Aug. 20, 1957.

Paul W. Williams, U. S. Atty., New York City, William S. Lynch, Asst. U. S. Atty., New York City, of counsel, for United States.

Bernard Moldow, New York City, for defendant.

FREDERICK van PELT BRYAN, District Judge.

Defendant was tried before this court without a jury on an indictment charging a violation of Section 201 of the Narcotics Control Act of 1956, 18 U.S.C. § 1407, having waived trial by jury pursuant to written stipulation. This section provides that persons convicted of violations of narcotic or marihuana laws of the United States, the penalty for which is imprisonment for more than one year, are required to register upon entering or leaving the United States under rules and regulations prescribed by the Secretary of the Treasury. The indictment alleges that defendant, being required to register under the section, unlawfully and knowingly entered the United States at Yonkers, New York, without doing so.

The facts were stipulated at the trial and are as follows:

The 24-year old defendant, a seaman by profession, is a citizen of the United States. He was convicted in Texas in 1953 of the purchase and possession of narcotics and the possession of marihuana in violation of 26 U.S.C. §§ 2553 (a) and 2593(a). The penalty under these sections is imprisonment for more than one year and defendant was sentenced to two years' imprisonment, which he served.

In March 1957 defendant signed as a member of the crew of the S. S. Virginia Lykes, an American vessel, at Houston, Texas, for a voyage to the Orient. The voyage lasted approximately four months and included calls in the Philippines, Japan and Korea. The vessel then proceeded to San Pedro, California, for refueling and remained there for ten or twelve hours. The crew was given shore leave and the defendant came ashore at San Pedro and remained ashore for most of the time the ship was in port.

From San Pedro the vessel proceeded through the Panama Canal to New York and docked at Yonkers to unload cargo. It was to proceed from there to its final destination at a Gulf port. At Yonkers the defendant was given a certificate by the Master authorizing him to proceed to the United States Marine Hospital in Staten Island for treatment of a back condition. He left the ship at Yonkers, went to the Marine Hospital, where he received treatment, and returned directly to the ship. He was away only a few hours. After he had reboarded the ship he was arrested upon the charge alleged in the indictment.

The defendant had not registered under the Treasury Department rules and regulations implementing Section 201 prior to his departure aboard the vessel from Houston, Texas, nor upon leaving his ship at San Pedro, California. However, he had no knowledge of the requirements of Section 201 nor of the Treasury Department regulations promulgated thereunder. In fact he had consulted his attorney in Houston before departure and had been advised that there was no reason why he should not resume his regular occupation as a seaman and sign on for the voyage. He was not advised of any requirements as to registration.

It is unnecessary to pass upon the at least doubtful question of whether defendant could be guilty of a violation of the recently enacted Section 201 and the more recently promulgated Treasury regulations in the absence of any knowledge of the requirements to register and under the circumstances of temporary absence from his ship under certificate of the Master for the purpose of receiving treatment in the United States Marine Hospital. For, in any event, it is plain that no offense was committed in this District. Even assuming that his coming briefly ashore for the purpose of receiving treatment in the Marine Hospital

was an entry of some sort, defendant did not then enter the United States within the meaning of the statute.

Section 201 provides that:

"* * * no citizen of the United States * * * who has been convicted of a violation of any of the narcotic or marihuana laws of the United States, or of any State thereof, the penalty for which is imprisonment for more than one year, shall depart from or enter into * * * the United States, unless such person registers, under such rules and regulations as may be prescribed by the Secretary of the Treasury with a customs official, agent, or employee at a point of entry or a border customs station. Unless otherwise prohibited by law or Federal regulation such customs official, agent, or employee shall issue a certificate to any such person departing from the United States; and such person shall, upon returning to the United States, surrender such certificate to the customs official, agent, or employee present at the port of entry or border customs station."

Part 23, Section 23.9a of the Treasury Department Rules and Regulations, T.D. 54285, which was not promulgated until January 9, 1957, requires registration under Section 201 to be made with the Collector of Customs "at the port of departure" on a designated form. The regulation further provides that the

"* * * original shall be given to the registrant who, upon his return to the United States, shall register with the collector of customs at the port of arrival by signing before a customs officer and in the space provided for this purpose and by surrendering the completed form to the customs officer * * *."

Thus the statute requires the registration to be made upon departure from and upon entry into the United States. The Treasury Department regulation specifically designates the collectors of customs at the "port of departure" and the "port of arrival" as the respective officers with whom the required registration must be made.

Though there are no cases which have construed the words "port of arrival" as used in this recent Treasury Regulation, it is apparent that, in the case of a seaman, the words could have only two meanings. They could mean (1) the first place in the United States where a seaman returning from a foreign voyage went ashore, or (2) the final destination of the vessel in the United States, where the seaman would permanently disembark.

Though the former meaning seems the better one (see Lazarescu v. United States, 4 Cir., 199 F.2d 898), under neither view did Sanchez enter the United States at Yonkers, New York, as this indictment charges.

■ Yonkers was merely a port of call on a passage in an American vessel from San Pedro, California, in the United States to a Gulf port in the United States. If Sanchez entered the United States at all after the voyage to the Orient within the meaning of the statute he did so when he went ashore at San Pedro, California. He cannot be deemed to have entered the country again at Yonkers, New York, for he had never left the country after his reentry at San Pedro when he reembarked for the completion of a voyage to a Gulf port destination which did not touch at any port outside of the United States. From San Pedro forward he was merely traveling from one United States port to another.

The Supreme Court, in construing the word "entry" in Section 19(a) of the Immigration Act of 1917, 8 U.S.C.A. § 1251(a), held that one can only make an "entry" into the United States if his ship arrives from a foreign port or place, and that one who travels from one United States port to another United States port does not enter the United States when he disembarks. Barber v. Gonzales, 347 U.S. 637, 74 S.Ct. 822, 98 L.Ed. 1009. See, also, United States ex rel. Claussen v. Day, 279 U.S. 398, at page 401, 49 S.Ct.

# 770

354, at page 355, 73 L.Ed. 758, where the court said:

"There is no such entry where one goes to sea on board an American vessel from a port of the United States and returns to the same or another port of this country without having been in any foreign port or place."

 Plainly the statute and the regulations promulgated thereunder do not contemplate a registration with the collector of customs at every United States port touched on the return trip from a foreign voyage. Part 23, Section 23.9a of the Treasury Department Rules and Regulations, T.D. 54285, provides that when a person registers his departure from the United States he shall execute customs form 3231 and the "original shall be given to the registrant." The registrant is then required to surrender "the completed form to the customs officer" at the port of arrival on his return to the United States. Since the registrant is given only the original of the form, he can surrender it only once. The regulations do not contemplate that a person will register every time he lands at a United States port whether he is reentering the country or not. Registration is required only at the "port of departure" and at the "port of arrival".

Assuming that technical violations of the statute may possibly have occurred at Houston, Texas, when defendant departed from the United States aboard an American vessel, without registering, or at San Pedro, California, when he first went ashore from such a vessel without registering, such offenses occurred in Texas and California. But the defendant is not charged with such offenses, and, indeed, if he were venue in this court would be absent. United States Constitution, Art. III, § 2, cl. 3; Rule 18, F.R.Crim.P., 18 U.S.C.; United States v. Johnson, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236.

Since there was no violation of Section 201 committed by the defendant in the Southern District of New York as charged in the indictment, the indictment is dismissed and the defendant is ordered discharged.