**UNITED STATES of America**

v.

**Michael FLAXMAN.**

**No. 66 Cr. 559.**

United States District Court
S. D. New York.

Oct. 17, 1969.

Robert M. Morgenthau, U. S. Atty., Southern District of New York, by James T. B. Tripp, Asst. U. S. Atty., for plaintiff.

Carlino Pearsall & Soviero, Mineola, N. Y., by Joseph F. Soviero, Jr., Jamaica, N. Y., for defendant.

OPINION

TYLER, District Judge.

Defendant was indicted under 18 U.S.C. §§ 2 and 1001 for aiding and abetting others in knowingiy falsifying and misrepresenting material facts within the jurisdiction of an agency of the United States. In 1963, when the alleged

crimes took place, defendant was a real estate salesman in Queens County, New York, operating out of offices and selling houses in the vicinity of Jamaica. The grand jury charged that defendant caused false representations to be made or aided and abetted in the making of false representations to the Veterans Administration ("VA") in order to improve the chances of two veteran-applicants, who were buying houses through him, of receiving a home loan guaranty from the VA.

According to the evidence at trial, the representations were included on Finance Form 1802, Application for a Home Loan Guaranty, and on employment verification forms which were sent to the VA with the 1802 form. These forms were made out by the veteran-applicant with at least some assistance from defendant. The government's evidence tended to show that it was at that point that defendant aided and abetted the veterans in making the admittedly false representations on the forms. The forms were then taken to a prospective lender, Peoples Mortgagee Co., Inc., which was also located in Jamaica, Queens. The lender reviewed, stamped, and signed the application forms and mailed them (with other documents and a covering letter) from Queens to the office of the VA in Manhattan. The lender was not indicted, nor was it in any way accused by the government of being more than an unwitting party to the criminal acts.

Testimony at trial from both the lender and the only official of the VA called to the stand established the mailing to Manhattan as normal procedure. But this established procedure was not in accord with the regulations of the VA:

"To apply for a guaranteed loan the veteran and the prospective lender shall complete and sign in duplicate Finance Form 1802, Application for a Home Loan Guaranty. The lender shall inquire of *the nearest office* of the Veterans Administration whether the proposed borrower is eligible and the amount of his available guaranty." 38 C.F.R. § 36.4024(a) (emphasis added).

At the time of mailing, there was a VA office in Brooklyn which was nearer to both the office of the prospective lender and the property on which the loan guaranties were sought.

All the events which were crucial to the criminal act, except the receipt of the forms by the VA in its Manhattan office, took place in Queens and Brooklyn.[1] If the lender had sent the forms to the office prescribed by regulation or if the VA had refused to accept the forms at any office except the one prescribed by regulation, all the elements of the criminal transaction, from start to completion, would have taken place in Queens and Brooklyn. Queens and Brooklyn lie in the Eastern District of New York; Manhattan lies in the Southern District of New York.

The government brought this case in the Southern District, basing venue and jury vicinage on the receipt of the falsified forms by the VA office in Manhattan. The defendant timely moved to have the indictment dismissed for improper venue and vicinage and a resulting violation of his rights under Rule 18, F.R.Cr.P.[2] and the Sixth Amendment.[3] The motion is granted.

■ The venue rules and the jury vicinage provision of the Sixth Amendment are not to be treated lightly. United States v. Johnson, 323 U.S. 273, 276,

---

[1.] There was uncontradicted evidence that one veteran-borrower and defendant journeyed to the Brooklyn VA office to give additional information on one of the applications.

[2.] "Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed."

[3.] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed * * *."

65 S.Ct. 249, 89 L.Ed. 236 (1944);[4] Travis v. United States, 364 U.S. 631, 636, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961); Delaney v. United States, 199 F.2d 107, 115–116 (1st Cir. 1952). The framers of the Bill of Rights considered jury vicinage rights sufficiently fundamental to add to the words of Article III, § 2, "The Trial of all Crimes * * * shall be held in the State where the said Crimes shall have been committed * * *", the more stringent requirements of the Sixth Amendment which guarantee trial before "an impartial jury of the State and district wherein the crime shall have been committed." Rule 18 applies those standards to venue, limiting the prosecution to a district in which the offense was committed.[5]

There are a number of policies which find expression in the venue and vicinage provisions of the Constitution and in Rule 18. In order that the defendant be tried before the most informed jury, the Sixth Amendment directs that trial be had among those who know the local conditions surrounding the criminal acts and who should thus be able to draw the most accurate inferences from the evidence presented at trial. The venue provisions seek to avoid the prejudice to a defendant's case that might well result from facing trial in a place where it would be difficult to obtain witnesses and to prepare for trial. Thus the prosecutor is not to gain an advantage over the defendant by an arbitrary choice of the place in which the defendant is to be tried. Finally, since most crimes take place in the district in which the defendant resides, the venue provisions also generally aim to reduce the hardship to the defendant that would usually be caused by trial at a distance from his home and friends. United States v. Cores, 356 U.S. 405, 410, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958); see Journals of the House of Burgesses, 1766–1769, Kennedy ed., 214 (1906); 1 Cambridge History of the British Empire 668 (1929).

Frequently the forbidden criminal behavior of the 20th century is complex in the relation of its crucial elements, and those elements may be widely spread out in space. Congress has the power to define the elements of a crime carefully and give the executive power to prosecute it in one or any of the districts in which the crucial elements of the crime are performed. Travis v. United States, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961). Yet in approaching any particular piece of legislation, or a set of facts which must be analyzed by standards set out in a statutory scheme, the proper course for a court is to remain constantly faithful to the policies of the Sixth Amendment and the venue provisions and to consider the import of the statute and factual situation so as to give full scope to those fundamental policies. United States v. Johnson, 323 U.S. 273, 275, 65 S.Ct. 249, 89 L.Ed. 236 (1944).

In the case at bar, the government contends that venue and jury vicinage properly lie in the Southern District of New York because the crime was not complete until the application forms had passed into the hands of the VA in Manhattan and so come into the jurisdiction of an agency of the United States. Therefore, under the multiple venue statute, 18 U.S.C. § 3237, it is said, venue and vicinage should lie in the Southern District of New York. It is correct that the crime was not complete until the forms passed into the hands of the VA.

---

4. "Questions of venue in criminal cases * * * are not merely matters of formal legal procedure. They raise deep issues of public policy * * *", at 276, 65 S.Ct. at 251.

5. It is worth noting that the Sixth Amendment has been repeatedly interpreted as providing a venue guarantee of trial in the State and district in which the crime was committed. Salinger v. Loisel, 265 U.S. 224, 232, 44 S.Ct. 519, 68 L.Ed. 989 (1924), Haas v. Henkel, 216 U.S. 462, 473, 30 S.Ct. 249, 54 L.Ed. 569 (1910), Burton v. United States, 202 U.S. 344, 381, 26 S.Ct. 688, 50 L.Ed. 1057 (1906), Cook v. United States, 138 U.S. 157, 181, 11 S.Ct. 268, 34 L.Ed. 906 (1891), In re Palliser, 136 U.S. 257, 265, 10 S.Ct. 1034, 34 L.Ed. 514 (1890).

It is equally true that that event took place in the Southern District. If the defendant had mailed the forms to Manhattan himself or if the lender had been indicted as a conspirator with the defendant, this argument might well carry the point. *Compare* Reass v. United States, 99 F.2d 752 (4th Cir. 1938).

But the present case is more complex than that. The defendant completed his active role in the crime in the Eastern District. There the forms were handed over to the lender who is considered by the government to be only the unwitting agent of the defendant and the veterans in the completion of the crime. It was the lender who then sent the forms to the VA office in Manhattan. This was admittedly in the course of normal procedure, but it was in violation of the published regulations of the VA, regulations whose authority was noted on the face of the 1802 form. As was its normal procedure, the VA acquiesced in this violation of its own regulations. If the government were to prevail and proper venue and jury vicinage were found in the Southern District, this court would allow defendant's rights under Rule 18 and the Sixth Amendment to be conditioned upon the government's own violation of its regulations to which defendant has in no way acquiesced.

It is clear which way the policies of the Sixth Amendment and Rule 18 point. Virtually all the evidence which the jury had to consider related to events which took place in the Eastern District. Virtually all the witnesses for both the government and the defense lived in the Eastern District. The defendant lives in the Eastern District, and his attorney has his law office there. It is reasonable to assume that the most informed jury would be found in the Eastern District, that witnesses would be more easily obtained there, the case more easily prepared and the hardship on the defendant of a criminal trial minimized. Naturally, the detrimental consequences would be even greater if the VA's disregard of its regulations in the interest of convenience had dictated that these forms be sent to St. Louis or Seattle and the government had chosen to bring trial there, or, conversely, if defendant had lived in St. Louis and the VA required the forms to come to Manhattan.

■ I find that the jury vicinage provisions of the Sixth Amendment and the venue requirement of Rule 18 guarantee a right to a criminal defendant which is so fundamental that a trial may not be brought in a district in which venue or vicinage is based solely on the failure of the government to follow its own published regulations, when that failure was in no way acquiesced in or directly caused by the defendant or those whom he aided and abetted or conspired with in the commission of the crime. The Sixth Amendment was written against the history of an arbitrary British government trying American subjects in England for crimes committed in the colonies. Blume, The Place of Trial of Criminal Cases: Constitutional Vicinage and Venue, 43 Mich.L.Rev. 59 (1944). The standards which the Amendment established are stringent ones, and they were purposely made stringent. In the light of those standards, it would be unjust to let so important a matter as jury vicinage be deermined solely by the arbitrary operation of a government agency which chooses to disregard its own published regulations.

■ This result will work no hardship on the government. Venue and vicinage may properly be had in the Eastern District of New York. United States v. Ruehrup, 333 F.2d 641 (7th Cir.) cert. denied 379 U.S. 903, 85 S.Ct. 194, 13 L.Ed.2d 177 (1964); United States v. Gross, 276 F.2d 816, 820 (2d Cir.) cert. denied 363 U.S. 831, 80 S.Ct. 1602, 4 L.Ed.2d 1525 (1960); United States v. Lefkoff, 113 F.Supp. 551, (E.D.Tenn. 1953). In this case, with most of its witnesses living in the Eastern District, trial there would, in fact, have been easier for the government. That will probably be true in the greater number of cases involving circumstances analogous to those presented here.

Defendant's motion for dismissal of the indictment on grounds of improper venue and jury vicinage under Rule 18, F.R.Cr.P., and the Sixth Amendment is granted. It is so ordered.