**UNITED STATES of America, Plaintiff,**

v.

**Richard DOUGLAS, Defendant.**

**No. CR 96–0348 TEH.**

United States District Court,
N.D. California.

Feb. 20, 1998.

John W. Keker, Elliott R. Peters, Keker & Van Nest, San Francisco, CA, for Plaintiff.

Eduardo G. Roy, U.S. Attorney's Office, Criminal Div., San Francisco, CA, Theodore Greenberg, Robert E. O'Neill, Deputy Independent Counsel, Alexandria, VA, Donald C. Smaltz, San Francisco, CA, for Defendant.

## ORDER DISMISSING GRATUITIES COUNTS

HENDERSON, Chief Judge.

This case arises out of an investigation by the Office of Independent Counsel ("OIC" or government) of the former Secretary of Agriculture Michael Espy. The defendant, Richard Douglas, was charged with giving, offering or promising unlawful gratuities to Espy and with making, and causing others to make, unlawful campaign contributions to the political campaign of Henry Espy, Michael Espy's brother. At the close of the government's case, the defendant moved for acquittal under Federal Rule of Criminal Procedure 29, arguing that the government failed to provide any evidence at trial that the defendant committed the charged crimes in the Northern District of California. For the reasons set forth below, the Court hereby grants defendant's motion.

## OVERVIEW

The defendant Richard Douglas was Senior Vice–President for Corporate Affairs at Sun–Diamond Growers, a large agricultural collective of growers of raisins, walnuts, prunes, figs, and hazelnuts headquartered in Pleasanton, California.[1] Douglas was indicted for, among other things,[2] two separate counts of providing illegal gratuities to then Secretary of Agriculture Michael Espy in violation of 18 U.S.C. sections 201(c)(1)(A) and 2. Section 201(c)(1)(A) prohibits the giving, offering, or promising of things of value to public officials for or because of any official act performed or to be performed by the public official. Count One charged that between January, 1993 and May, 1994, Douglas provided Espy with meals, luggage, and entertainment in the Northern District of California. Count Two charged that Douglas reimbursed Patricia Dempsey, Espy's then girlfriend, for a plane ticket to Athens, Greece so she could accompany Espy to an international conference on tree nuts. The remaining six counts concerned a scheme to make illegal campaign contributions to the political campaign of Henry Espy, Michael Espy's brother.

At trial, the OIC provided evidence that Douglas gave numerous gifts to Espy. The evidence showed that: Douglas gave Espy a set of luggage worth $2,427.40 in Bethesda, Maryland; Douglas treated Espy to several dinners at restaurants in Washington, D.C., Bethesda, Maryland, Atlanta, Georgia, New York City, and Los Angeles, California; and, Douglas provided Espy with tickets to the U.S. Open tennis tournament and limousine rides in New York City. The evidence also showed that Douglas expensed each of these gifts to Sun–Diamond Growers and that Sun–Diamond reimbursed him for the cost of these gifts.

In regard to Count Two, the OIC adduced evidence at trial that in Washington, D.C. Douglas gave over $3,000 in cash to Patricia Dempsey to reimburse her for transportation to Greece so that she could accompany Espy, who was to address a conference sponsored by the International Nut Council. The International Nut Council reimbursed Douglas

---

1. The Court took judicial notice of the fact that Pleasanton, California is located in the Northern District of California.

2. The original indictment contains nineteen counts. Two counts concern false statements that the defendant allegedly made to FBI agents in the course of this investigation. Nine others concern alleged false statements made by the defendant in seeking a mortgage to purchase a private home in Oakland, California. The Court, in a prior order, granted defendant's motion to dismiss the false statement counts, and severed the mortgage counts. April 2, 1997 Order. Prior to trial, the OIC issued a renumbered indictment, omitting the severed and dismissed counts. In this Order, the Court refers to the numbers in the renumbered indictment.

for this expense. The International Nut Council sent a copy of the invitation asking Espy to attend the nut conference to Douglas in Pleasanton, California so that he would forward the invitation to Espy. The OIC also presented evidence that Douglas faxed the invitation from Pleasanton to the Department of Agriculture in Washington, D.C., and that Espy mailed his acceptance of this invitation to Douglas in Pleasanton.

In order to prove the intent element of the gratuities counts—that Douglas provided these gifts to Espy "for or because of" any official act performed or to be performed by the Secretary of Agriculture—the OIC provided evidence that issues of importance to Douglas were pending before the Department of Agriculture at the time Douglas gave these gifts. The majority of these issues were important to Douglas because they were important to Sun–Diamond Growers. However, the OIC also provided evidence, over Douglas' repeated objections, of an additional matter pending before the Department of Agriculture that was of importance to Douglas, but not to Sun–Diamond: the Elsmere "land swap" deal. This was a deal between the Elsmere Corporation and the United States Forest Service, an agency within the United States Department of Agriculture, to trade land owned by the United States Forest Service in Elsmere canyon for land owned by the Elsmere Corporation, so that the corporation could create a landfill in Elsmere canyon. The Elsmere Corporation retained Douglas as a lobbyist to help arrange this deal.

At the close of the government's case, the defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the OIC failed to provide any evidence that the defendant committed any part of the charged crimes in the Northern District of California. The Court reserved ruling on defendant's motion and submitted the case to the jury. The jury returned a guilty verdict on Count One, hung on Count Two, and acquitted the defendant on each of the remaining counts. After the jury announced its verdict, the Court asked the defendant and the OIC to brief the issues raised in defendant's Rule 29 motion as they relate to Counts One and Two, the gratuities counts.

## LEGAL STANDARD

■ Rule 29(a) requires a court to enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction." FED. R.CIV.P. 29(a). In considering a Rule 29 motion, the Court "must determine whether, viewing the evidence in the light most favorable to the government, the jury could reasonably find the defendant guilty beyond a reasonable doubt."[3] *United States v. Merriweather*, 777 F.2d 503, 507 (9th Cir.1985) (quoting *United States v. Hazeem*, 679 F.2d 770, 772 (9th Cir.1982)). The trial court may, as the Court did in this case, reserve decision on a Rule 29(a) motion made at the close of the government's case. FED.R.CRIM.P. 29(b). If it does reserve decision, it must decide the motion on the basis of the evidence presented to the jury at the time the ruling was reserved. FED.R.CRIM.P. 29(b).

## ANALYSIS

■ Article III (Section 2, Clause 3) and the Sixth Amendment of the United States

---

**3.** The Ninth Circuit has held that the existence of criminal venue is a question of law, not a question of fact. *United States v. Childs*, 5 F.3d 1328, 1331 (9th Cir.1993). A clear majority of courts to have considered this question, however, have concluded that the existence of criminal venue is a question of fact. *See e.g., United States v. Miller*, 111 F.3d 747, 749 (10th Cir.1997); *United States v. Redfearn*, 906 F.2d 352, 354 (8th Cir. 1990). The Court need not decide whether the question is properly considered one of fact for the jury or one of law. In either case, the Court concludes as a matter of law that the government failed to meet its burden of proof.

At the close of trial, the defendant asked the Court to instruct the jury that it must find venue for each of the crimes charged. However, the Court concluded that, although venue is somewhat factual, because the Ninth Circuit has held that the existence of venue is a question of law, and because questions of law are properly decided by the Court and not the jury, such an instruction would be inappropriate. *Childs*, 5 F.3d at 1331. The defendant now moves for a new trial, pursuant to Federal Rule of Criminal Procedure 33, arguing that the Court erred in refusing to instruct the jury on the venue issue. The Court need not reach defendant's Rule 33 motion, however, because the Court finds that the government failed to provide any evidence of venue as to Counts One and Two.

Constitution, as well as Federal Rule of Criminal Procedure 18, guarantee that a criminal defendant be tried in the district where the crimes were committed. *United States v. Evans,* 62 F.3d 1233, 1236 (9th Cir.1995);*United States v. Corona,* 34 F.3d 876, 878–79 (9th Cir.1994). The requirement of venue in a criminal trial cannot be taken lightly as it raises "deep issues of public policy." *United States v. Johnson,* 323 U.S. 273, 276, 65 S.Ct. 249, 89 L.Ed. 236 (1944). The government bears the burden of proving venue, *United States v. Beech–Nut Nutrition Corp.,* 871 F.2d 1181, 1188 (2d Cir.1989), and proof may be direct or circumstantial. *Childs,* 5 F.3d at 1332. Because venue is not an essential element of the crime,[4] the government need only prove venue by a preponderance of the evidence, not beyond a reasonable doubt. *United States v. Powell,* 498 F.2d 890, 891 (9th Cir.1974). When more than one crime is charged, venue must lie for each crime. *Beech–Nut,* 871 F.2d at 1188.

■ Where, as here, "the federal statute defining an offense does not indicate explicitly where Congress believes the criminal act is committed, 'the locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *Id.* (quoting *United States v. Anderson,* 328 U.S. 699, 66 S.Ct. 1213, 90 L.Ed. 1529 (1946)); *see also United States v. Angotti,* 105 F.3d 539, 542 (9th Cir.1997). "In order to determine for venue purposes where a crime occurred 'we examine the key verbs in the statute defining the criminal offense to find the scope of relevant conduct.'" *Corona,* 34 F.3d at 879 (*quoting United States v. Georgacarakos,* 988 F.2d 1289, 1293 (1st Cir.1993)). The key verbs in the gratuities statute are "give," "offer," and "promise."[5] The issue here is not one of sufficiency of evidence. The OIC provided no evidence whatsoever at trial that the defendant gave, offered, or promised a thing of value to Espy in the Northern District of California. Thus, the gratuities charges must be dismissed for lack of venue.

The OIC counters that the gratuities charges are continuing offenses, and that part of the ongoing gratuities scheme was the defendant's reimbursement by Sun–Diamond Growers. Because the corporate headquarters of Sun–Diamond is located in Pleasanton, California, which in turn is located in the Northern District of California, the government argues that venue was proper in this district.

The government's argument is misplaced. Sun–Diamond's reimbursement of the defendant's expenses in providing gifts to the Secretary of Agriculture is circumstantial evidence that the defendant harbored the requisite intent to be found guilty on the gratuities charges, i.e. that the gifts were "for or because of official acts." However, the reimbursement was not itself an element of the crimes charged. "When a crime is an offense that is not unitary but instead spans space or time, it may be governed by 18 U.S.C. § 3237(a)." *Beech–Nut,* 871 F.2d at 1188. This statute provides:

> [e]xcept as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be ... prosecuted in any district in which such offense was begun, continued, or completed.

18 U.S.C. § 3237(a).

The defendant concedes that the gratuities offenses may be considered continuing offenses under section 3237(a). However, neither of the gratuities offenses charged was begun, continued, or completed in the Northern District of California. Thus, even under

---

**4.** The defendant erroneously argues that the government failed to provide sufficient evidence on the "venue element" of the charged crimes. Venue is not an element of the offense. *United States v. Kaytso,* 868 F.2d 1020, 1021 (9th Cir. 1988).

**5.** In relevant part, section 201(c)(1)(A) of Title 18 of the United States Code provides:

> Whoever otherwise than as provided by law for the proper discharge of official duty directly or indirectly *gives, offers, or promises* anything of value to any public official, ... for or because of any official act or to be performed by such public official ... or person selected to be a public official [shall be guilty of an offense against the United States.]
> (emphasis added).

the statutory venue provision for continuing offenses, venue cannot lie in Northern California for these charges. The crime charged in Count One was complete once the defendant gave, offered or promised the meals, luggage or entertainment to Michael Espy. *See United States v. White,* 887 F.2d 267, 272 (D.C.Cir.1989) (crime of bribery is complete "upon the public official's receipt or agreement to receive payments for an official act"). The jury was instructed that to find the defendant guilty of Count One, it need only find beyond a reasonable doubt that the defendant gave a single thing of value to Espy for or because of any official act performed or to be performed by Espy. To find the defendant guilty the jury need not have found that the defendant was reimbursed for these things of value.

As to Count Two, the government's argument is further weakened by the fact that it was the International Nut Council, not Sun–Diamond, that reimbursed defendant for the expense of the airplane ticket to Greece. The International Nut Council is not located in the Northern District of California. The OIC attempts feebly to salvage its case by arguing that one of the reasons defendant arranged for Patricia Dempsey to accompany Espy to Greece was to curry favor with Sun–Diamond. The OIC argues, in addition, that the evidence that the defendant sent a fax from Sun–Diamond headquarters in Pleasanton, California to the Department of Agriculture inviting Espy to attend the Nut Council conference, and that the Secretary mailed his acceptance to the defendant at Sun–Diamond headquarters, is sufficient to satisfy the venue requirement for Count Two.

These tangential facts cannot create venue in the Northern District of California. The defendant was not charged with inviting Espy to attend the conference in Greece. He was charged with providing Secretary Espy with the value of the companionship of his girlfriend, Patricia Dempsey, at the nut conference in Athens, Greece. Mailing an invitation to Espy to attend an agricultural conference was not part of the crime charged, nor is it a criminal act. The government may not bring a criminal trial in any location remotely connected to the defendant's actions, but must comply with the constitutional and statutory criminal venue requirements.

The OIC next argues that venue was proper because the jury could have found the defendant guilty of aiding and abetting Sun–Diamond in giving things of value to Espy. The indictment charges Douglas with aiding and abetting, under 18 U.S.C. § 2, each of the principal crimes charged. "[A]n individual accused of aiding and abetting a substantive crime may be prosecuted where the principal committed the substantive crime." *United States v. Strawberry,* 892 F.Supp. 519, 526 (S.D.N.Y.1995). While the indictment contains aiding and abetting charges, the government completely failed to develop this theory of liability at trial. The OIC presented no evidence or argument at trial that Sun–Diamond committed a crime, or that the defendant may be found guilty of Sun–Diamond's crimes even if he did not himself commit these crimes. On the contrary, the government pursued two alternate theories to prove the intent element of the gratuities counts: first, that the defendant gave the unlawful gratuities to curry favor with Espy for or because of official acts that would benefit Sun–Diamond; and, second, in the alternative, that the defendant did so for or because of official acts to benefit the Elsmere Corporation. The OIC cannot rely upon an aiding and abetting theory to establish venue when it never presented this theory of liability at trial.

Finally, the OIC argues that the defendant waived his right to challenge venue. Criminal venue, like civil venue and the rights to a jury and to a speedy trial in the criminal context, may be waived. Although "[q]uestions of venue in criminal cases ... are not merely matters of formal legal procedure," *United States v. Johnson,* 323 U.S. 273, 276, 65 S.Ct. 249, 89 L.Ed. 236 (1944), an accused may intelligently waive his right to trial in a certain area, *United States v. Evans,* 62 F.3d 1233, 1236 (9th Cir.1995), particularly when the accused is represented by counsel. *Hanson v. United States,* 285 F.2d 27, 28 (9th Cir.1960). A criminal defendant may waive his venue rights by an express waiver, a motion to transfer, or by inaction.

220–21 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 2d § 306 (1982). "The absence of an objection to venue, or a motion specifically raising the defect, has been held to constitute a waiver." *Id.* at 221.

The defendant did not raise a venue objection until the close of the government's case. Where the improper venue is apparent on the face of the indictment, the defendant is held to have waived venue by failing to object prior to going to trial. *Id.* at 221–22; FED. R.CRIM.P. 12(b)(1) ("[d]efenses and objections based on defects in the institution of the prosecution" "must be raised prior to trial."). However, the rule that an objection must be made before trial applies only when the venue defect is apparent on the face of the indictment. *United States v. Melia,* 741 F.2d 70, 71 (4th Cir.1984). Here, no defect appears in the indictment. The indictment specifically alleges in the charging paragraphs that "in the Northern District of California and elsewhere" the defendant gave unlawful gratuities.

The OIC argues that the plain language of the indictment notwithstanding, the defendant was fully cognizant of the venue defects prior to the commencement of the trial, and should have raised them earlier. The government submitted extensive extrinsic evidence to prove the defendant's prior knowledge. Before the grand jury indicted the defendant, defense counsel wrote several letters to the Independent Council complaining that venue for the gratuities charges did not lie in the Northern District of California, and that the case should be brought instead in the District of Columbia. The indictment itself spells out the government's theory of venue for Count One, that the defendant was reimbursed by Sun–Diamond in Pleasanton, California. After the defendant was indicted in the Northern District of California, defense counsel wrote a letter to the United States Attorney General, arguing that the gratuity charges were improperly venued. The defendant even made the issue public, by issuing a press release requesting that the case be transferred to the District of Columbia. The government's Trial Memorandum detailed the location of each gift provided by the defendant to Espy. Finally, more than one month before trial, the government specifically challenged the defendant to move to dismiss or transfer the indictment for lack of venue if he believed venue was lacking. *See* United States' Response to Defendant's Trial Memorandum at 2 ("If Douglas had a legitimate complaint regarding venue, he should have moved to dismiss the indictment for lack of venue or moved for a transfer of venue."). Although he knew full well of the venue problem early on in the proceedings against him, the defendant waited to never raise the issue to the Court until after the government rested. The OIC argues that defendant's decision was strategic and that the Court should not countenance such gamesmanship.[6]

The defendant had no choice but to wait until after the government presented its case to challenge the government's choice of venue. Had the defendant brought a motion to dismiss or transfer for improper venue prior to trial, the Court would have been compelled to deny the motion. In considering a pretrial motion, the Court must accept all of the allegations on the face of the indictment as true and may not consider evidence that may only be presented at trial. *United States v. Mendoza,* 108 F.3d 1155, 1156 (9th Cir.1997) ("only the indictment may be considered in pretrial motions to dismiss for lack of venue"); *United States v. Jensen,* 93 F.3d 667, 669 (9th Cir.1996). The indictment properly alleges that venue lies for each charge in the Northern District of California. "[W]here there is a proper allegation of venue in the indictment, but the government fails to prove that allegation at trial, a challenge to venue in a motion for acquittal is timely." *United*

---

**6.** The Court notes that the government's extrinsic evidence demonstrates not only that the *defendant* was fully apprised of the venue problem prior to trial, but also that the *government* was aware of the venue problem and of the defendant's objections thereto. For reasons, beyond the comprehension of this Court, the OIC chose to bring this case in the Northern District of California despite its knowledge of the venue problem. The government cannot now claim unfair surprise or improper gamesmanship by the defendant. The defendant in no way hid the ball and he raised the issue to the Court at the earliest possible opportunity.

States v. Sandini, 803 F.2d 123, 127 (3d Cir.1986). Thus, by going to trial without protesting improper venue the defendant did not waive his objections.

## CONCLUSION

Because the government failed to provide evidence of proper venue, Counts One and Two of the renumbered indictment are HEREBY DISMISSED.[7] Of course, the government is free to reindict the defendant for the unlawful gratuity counts in a proper venue. The double jeopardy clause does not bar reprosecution where charges are dismissed for lack of venue because "the failure to establish venue does not go to guilt or innocence." Kaytso, 868 F.2d at 1021. The double jeopardy clause "does not preclude a second prosecution where a defendant successfully moves to terminate proceedings against him on a basis unrelated to factual guilt or innocence." Id.

IT IS SO ORDERED.

---

7. Because the Court grants defendant's Rule 29 motion, it declines to reach the other issues raised by the defendant in his Supplemental Memorandum filed December 8, 1997.