IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 29, 2007

Charles R. Fulbruge III
Clerk

No. 06-41457

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JOSE ADAM REYES

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Texas

USDC No. 4:05-CR-96-15

Before HIGGINBOTHAM, WIENER, and GARZA, Circuit Judges.

PER CURIAM:[*]

A jury in the Eastern District of Texas convicted Jose Reyes of conspiring to distribute and possess with intent to distribute drugs. Reyes appeals, arguing that he should not have been tried in that district and urging error in the court's charge to the jury regarding drug quantity. We affirm.

I

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

In late 2000, Fred Flores started a cocaine distribution business from his home in Dallas. He began by recruiting customers/sub-distributors in Tennessee and Arkansas. After developing these contacts, he located suppliers in Corpus Christi and Dallas through his son. Various transporters hauled cocaine by "pulling" gas tanks from cars or trucks and loading the tanks with drugs, then driving from Texas to Tennessee or Arkansas and periodically bringing back cash. Flores hired individuals to help remove the gas tanks, from which he subsequently pulled purchase money before placing more cocaine in the tanks and re-installing them for transport.

Jose Reyes lived down the street from Flores. He and a man named Arthur Gonzalez pulled gas tanks at Flores's house in Dallas and re-installed them, on at least two occasions. According to some testimony, Reyes was a very minor participant who worked mostly as a bricklayer, and Reyes never saw or handled the drugs – he simply pulled down the tanks, saw the cash inside, waited outside while drugs were put in the tank inside the house, and then re-installed the tank. Reyes himself testified that he had never seen drugs, that he removed just two tanks, and that when he saw someone drilling a hole in one tank he became suspicious and never went to the house again. According to other testimony, however, Reyes handled the drugs in the tanks.

The Government indicted Reyes and fifty-six co-defendants in the Sherman Division of the Eastern District of Texas, alleging a conspiracy to distribute and possess with intent to distribute drugs in violation of 21 U.S.C. § 846 and a conspiracy to launder money in violation of 18 U.S.C. § 1956. Reyes was indicted only on the distribution count. Reyes moved to transfer venue to the Northern District of Texas, relying upon the Sixth Amendment and the Jury Selection and Service Act and requesting expert assistance in developing his claims. The court denied the motion.

Reyes went to trial, arguing that he did not know that Flores was moving drugs in the vehicles. On the second day of deliberations, the jury twice stated it was deadlocked. The court delivered an Allen[1] charge. On the third day, the jury asked whether an individual who becomes aware of an illegal act while the act is going on, and then completes the act, is part of the conspiracy. The court referred the jury to the court's previous instructions. Soon after, the jury convicted Reyes.

II

Reyes makes a generalized argument, citing the Sixth Amendment, that he should have been tried in the Northern District of Texas, which includes Dallas, because the majority of the conspiracy occurred there. However, for a "continuing offense" like conspiracy, 18 U.S.C. § 3237(a) provides that venue is proper in any district in which the crime was "begun, continued, or completed." And the Supreme Court has found that rule consistent with the Sixth Amendment and Article III, holding that "the locality of a crime shall extend over the whole area through which force propelled by an offender operates."[2] Specifically for conspiracy, "venue is proper in any district where the agreement was formed or an overt act occurred."[3] This is true even if the defendant never set foot in that district.[4] Here, even though there is no evidence that Reyes ever traveled to the Eastern District, there is plenty of evidence that his co-conspirators drove drugs through the Eastern District on the way to Tennessee

---

[1] Allen v. United States, 164 U.S. 492 (1896).

[2] United States v. Johnson, 323 U.S. 273, 275 (1944).

[3] United States v. Caldwell, 16 F.3d 623, 624 (5th Cir. 1994) (citing United States v. Winship, 724 F.2d 1116, 1125 (5th Cir. 1984) and United States v. Pozos, 697 F.2d 1238, 1244 (5th Cir. 1983)).

[4] See United States v. Acosta, 763 F.2d 671, 681 (5th Cir. 1985).

and Arkansas, and one co-defendant was arrested in the Eastern District with 15 kilograms of cocaine on him. Venue in the Eastern District was proper.

### III

Reyes offers other arguments for why he should have been tried in the Northern District. He urges that the Sixth Amendment's "fair cross-section" requirement, which the Jury Selection and Service Act, 28 U.S.C. § 1861 et seq., essentially embodies, was violated in his case because the Dallas Division of the Northern District is about 50% white and 27% Hispanic, whereas the Sherman Division of the Eastern District is about 78% white and 10% Hispanic,[5] and he is Hispanic. He also argues that the Northern District has more fully complied with the Act's requirement that each district include as many citizens as possible[6] in its jury list because it supplements voter lists with driver's license lists, whereas the Eastern District uses only voter lists, and the use of driver's license lists increases minority (presumably Hispanic) participation. And all of this, he states summarily, violates the Equal Protection Clause.

Reyes's first argument does not address the cross-section principle because, under that principle, one does not compare the demographic profile of one district to that of another. Rather, one looks only to the district at hand to see if venires are fairly representative of the jury-eligible population of that district.[7] In any event, Reyes has failed to show that Eastern District venires are not representative of the jury-eligible population because he makes no

---

[5] Jurors for cases in those districts are drawn solely from the divisions in which each case is tried.

[6] The Act states that the principal source of names for random juror selection should be either "the voter registration lists or the lists of actual voters," 28 U.S.C. § 1863(b)(2), but the Act also states that each district's plan "shall prescribe some other source or sources of names in addition to voter lists where necessary to foster the policy and protect the rights secured [by the Act]." Reyes argues that the Eastern District's plan violates this "plain language."

[7] See Duren v. Missouri, 439 U.S. 357, 364-65 (1979).

attempt to show under-representation of eligible Hispanics in the Eastern District, in his venire or any other, compared to the general population of the district. He has shown no cross-section problem. To the extent that Reyes can and has raised a claim under the Jury Selection and Service Act, he has not shown that the Eastern District's juror plan violates the Act because the Eastern District is not required to use driver's license lists,[8] contrary to Reyes' claim, and again because he has failed to show under-representation of Hispanics compared to the general population. Finally, an Equal Protection violation requires something more than a valid cross-section claim; it requires a showing of purposeful discrimination,[9] which Reyes has not shown in this case.

## IV

Reyes argues that the court abused its discretion in denying his motion for appointment of an expert to evaluate the jury selection process in the Eastern District. For this proposition he cites a Ninth Circuit case where the court reversed the district court's refusal to appoint an expert to analyze a cross-section claim.[10] This case differs from Rodriguez-Lara. In Rodriguez-Lara, the Plaintiff adduced evidence indicating that Hispanics were substantially under-represented in the applicable jury pool and also provided a plausible theory – the exclusive use of voter lists – to explain their systematic exclusion from that pool;[11] Reyes failed to do the same. Reyes did not establish the need for an expert because his claims had no potential merit, as described above, which is

---

[8] See, e.g., United States v. Brummitt, 665 F.2d 521, 529 (5th Cir. 1981) (explaining that the "failure of an identifiable group to register and vote does not render invalid the selection of jurors from a voter registration list").

[9] Castaneda v. Partida, 430 U.S. 482, 493 (1977).

[10] See United States v. Rodriguez-Lara, 421 F.3d 932, 946 (9th Cir. 2005).

[11] Id. at 937-38.

far different from Rodriguez-Lara where the defendant himself made clear that with the aid of an expert, his claims might bear fruit.[12]

V

Finally, Reyes argues that, under Apprendi,[13] the jury should have decided the amount of drugs he was responsible for. That is, he asserts, the jury should have made an explicit finding in kilograms. This matters, he continues, because there was a factual dispute as to when he joined the conspiracy. However, Reyes was indicted under § 846 for conspiring to violate § 841(b)(1)(A) by conspiring to distribute or possess with intent to distribute drugs in the amounts specified by § 841(b)(1)(A). Additionally, Count 1 of the superceding indictment charged Reyes and his co-conspirators with conspiracy to "distribute or possess with intent to distribute . . . 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine . . . and 500 grams or more of a mixture of [sic] substance with methamphetamine . . . ."[14] And the jury found him guilty of that, pursuant to jury instructions mirroring the indictment.[15] He was indicted with, and found guilty of, the relevant amounts despite the judge's rejection of Reyes's requested instructions that would have required the jury to determine the drug quantity. Section 841(b)(1)(A) provides a ten-year mandatory minimum, which

---

[12] Id. at 946 ("Although Rodriguez has not established a prima facie case for a fair cross-section violation, he has made a substantial showing sufficient to warrant further inquiry.").

[13] Apprendi v. New Jersey, 530 U.S. 466 (2000).

[14] United States v. Flores, Superceding Indictment (filed Nov. 1, 2005).

[15] The jury instructions required the jury, inter alia, to find beyond a reasonable doubt "[t]hat two or more persons made an agreement to commit the crime of manufacture, distribute or possess with intent to manufacture, distribute or dispense . . . 5 kilograms or more of a mixture or substance containing cocaine . . . 500 grams or more of a mixture or substance containing methamphetamine . . . ."

applies even after Booker,[16] and Reyes received only a 78-month sentence after a safety valve sentence reduction.  His sentence was therefore proper.

AFFIRMED.

---

[16] See United States v. Farias, 481 F.3d 289, 291 n.4, 292 (5th Cir. 2007) (explaining the interaction between Booker and the minimums).