UNITED STATES of America,
Plaintiff-Appellee,

v.

Gerrold E. CALHOUN,
Defendant-Appellant.

No. 77–5175.

United States Court of Appeals,
Fifth Circuit.

Jan. 27, 1978.

Jose E. Martinez, Miami, Fla., John L. O'Donnell, Jr., Orlando, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Myron C. Baum, Acting Asst. Atty. Gen., Tax Div., Gilbert E. Andrews, Chief, Appellate Section, M. Carr Ferguson, Asst. Atty. Gen., Robert E. Lindsay, James A. Bruton, Attys., Daniel W. Schermer, Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before TUTTLE, CLARK and RONEY, Circuit Judges.

TUTTLE, Circuit Judge:

The defendant, Gerrold E. Calhoun, was indicted on two counts of tax evasion for the years 1969 and 1970, in violation of 26 U.S.C. § 7201,[1] and two counts of failure to file income tax returns covering the same years, in violation of 26 U.S.C. § 7203.[2] The jury was unable to reach a verdict as to Counts I and II, which embraced the tax evasion allegations, and those counts subsequently were dismissed on the government's motion. Guilty verdicts were returned as to the remaining counts of failure to file. After denying motions for acquittal and a new trial, the district court sentenced defendant to pay a $5,000 fine and to serve a one-year term of imprisonment on each count. The prison term as to Count IV was suspended and a two-year probation term imposed, conditioned upon payment of the fines and cooperation with the I.R.S. in determining defendant's tax liability for the years in question. We affirm.

It is undisputed that defendant did not file an income tax return in 1969 or 1970, despite the fact that he earned taxable income and incurred income tax liabilities during those years.[3] Count III of the indictment alleged that

during the calendar year 1969, the Defendant, . . . who was a resident of Leesburg, Florida, had and received gross income in excess of $600; that by reason of such income *he was required by law, . . . on or before April 15, 1970, to make an income tax return to the District Director of Internal Revenue for the Internal Revenue District of Florida, at Jacksonville, Florida, in the Middle District of Florida . . .;* and . . . he did willfully and knowingly fail to make said income tax return to the said Director . . . or to any other proper officer of the United States of America, in violation of Title 26, United States Code, Section 7203. [emphasis added]

---

1. The statute provides as follows:

    Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

    I.R.C. § 7201, 26 U.S.C. § 7201.

2. In pertinent part, the statute reads:

    Any person . . . required by this title or by regulations made under authority thereof to make a return . . ., who willfully fails to . . . make such return . .

    . at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution.

    I.R.C. § 7203, 26 U.S.C. § 7203.

3. The government's proof showed that defendant incurred a tax liability of $64,438.83 on taxable income of $173,293.26 in 1969. In 1970, the evidence established that defendant earned $125,285.96 and thereby incurred a tax liability of $65,166.70.

Count IV alleged a similar failure to file a return on April 15, 1971, covering tax year 1970. Defendant argues on appeal that since the government's proof established that he was not required to file a return until June 15 of both years, there exists a fatal variance between the indictment and the proof. *See United States v. Pandilidis,* 524 F.2d 644, 647–49 (6th Cir. 1975), *cert. denied,* 424 U.S. 933, 96 S.Ct. 1146, 47 L.Ed.2d 340 (1976); *United States v. Goldstein,* 502 F.2d 526, 528–31 (3d Cir. 1974). We find no merit in defendant's contention.

■ The Internal Revenue Code requires all calendar-year taxpayers[4] to make a return on or before April 15 following each tax year during which the taxpayer earns in excess of a specified amount of taxable income. 26 U.S.C. § 6072(a). However, as authorized by § 6081(a) of the Code, 26 U.S.C. § 6081(a), extensions of the normal time-for-filing requirement have been granted to some taxpayers. Specifically, United States citizens "residing or traveling outside the United States and Puerto Rico" on April 15[5] are authorized to make their return on or before June 15 of the same year. Treas.Reg. § 1.6081–2(a)(5). In all such cases, "a statement must be attached to the return showing that the [taxpayer] is a person" entitled to the extension. *Id.* The essence of defendant's position is that since the government failed to prove that he was a resident of the United States during 1969 and 1970, and since the evidence showed that he was living in St. Croix, Virgin Islands and St. Maarten,

Netherlands Antilles during those years, he was not required to file a return until June 15 of each year. Although we find merit in the government's position that the defendant had the burden of establishing his whereabouts on April 15 of the years in question,[6] we need not reach the burden of proof issue to resolve the question before us against the defendant.

■ In our view, the Regulation clearly attempts to accommodate taxpayers who, under the prescribed circumstances, are unable to comply with the normal time-for-filing requirement. On its face, the Regulation requires the taxpayer not only to file a return by June 15, but also to justify his claim to the right to file at that later time. The defendant here never filed a return for 1969 or 1970 and, of course, never attempted to justify an application of the exception. Under these circumstances, we hold that the defendant cannot now invoke the extension provided by § 1.6081–2(a)(5).[7] The drafters of the Regulation, in our opinion, simply could not have envisioned that a taxpayer should be permitted to ignore the normal filing deadline, never file a return, and subsequently be able to claim the benefit of the extension in an effort to defeat a criminal prosecution predicated upon his failure to file. Indeed, to permit such a result would fly in the face of the regulation's purpose and impose severe legal and administrative burdens on the taxing authorities.

---

4. There was no dispute at trial as to defendant's status as a calendar-year taxpayer.

5. Although the Regulation does not expressly refer to absences "on April 15," we conclude that it could not have been intended that citizens who temporarily reside or travel outside the country at any time during the tax year be entitled to avoid the April 15 filing deadline. *Cf.* Rev.Rul. 55–171, 1955–1 Cum. Bull. 80, 90, *declared obsolete in* Rev.Rul. 72–621, 1972–2 Cum. Bull. 651, 652 (granting the same extension for taxpayers absent "on April 15").

6. Our research indicates that no court has considered the burden of proof in this context. It would be wholly untenable, however, to require the government to account for the whereabouts of millions of taxpayers on April 15 of every

year. Since the Regulation provides an exception to the general rule, that burden should properly fall on the taxpayer who seeks to invoke the extension. In this case, the defendant conceded his inability to prove his whereabouts on April 15 of the two years in question.

7. *See United States v. Foster,* 197 F.Supp. 387, 396 (D.Md.1961), *rev'd on other grounds,* 309 F.2d 8 (4th Cir. 1962). We are not persuaded that *United States v. Bourque,* 541 F.2d 290 (1st Cir. 1976), is to the contrary. In that case the question was whether the defendant "was legally obligated to file the charged return [*i. e.* a calendar-year return] at all, and not merely whether he failed to file a clearly appropriate return on a specified date." *Id.* at 296.

In all criminal prosecutions, the defendant is entitled to be tried in the district in which "the crime shall have been committed." U.S.Const. amend. VI. The crime of failure to file an income tax return is committed in the judicial district in which the taxpayer is required to file. As previously noted, the indictment in this case alleged that defendant was required to file in the Middle District of Florida and failed to do so. Defendant now claims that the proof failed to establish his residency in that district and that he therefore was not required to file there. It is argued that this "[f]ailure to prove venue" requires a reversal of the conviction.

The general rule is that a taxpayer shall make his return "to the Secretary or his delegate . . . in the internal revenue district" of his "legal residence" or at the designated service center for that district. 26 U.S.C. §§ 6091(b)(1)(A)(i), (ii). An exception is provided for citizens whose "principal place of abode" for the tax period covered by the filing is outside the United States. 26 U.S.C. § 6091(b)(1)(B)(ii). The applicable Regulation provides as follows:

> The following income tax returns shall be filed with the Director of International Operations, Internal Revenue Service . . . .:
>
> &ast;  &ast;  &ast;  &ast;  &ast;  &ast;
>
> (b) Income tax returns of an individual citizen of the United States whose principal place of abode for the period with respect to which the return is filed is outside the United States. *A taxpayer's principal place of abode will be considered to be outside the United States if his legal residence is outside the United States or if his return bears a foreign address.*
>
> &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Treas.Reg. § 1.6091–3(b) (emphasis added). Defendant argues that since the evidence established that his legal residence during 1969 and 1970 was either St. Croix or St. Maarten, he was not required to file in the Revenue District specified in the indictment but with the Director of International Operations. Of course, since he did not make any return whatsoever, defendant is foreclosed from relying upon the foreign address portion of the Regulation.

On the basis of our study of the record in the district court, we conclude that defendant's argument must fail. The court instructed the jury that in order to convict they had to find beyond a reasonable doubt that the defendant was a legal resident of the Middle District during the two years in question. The term "legal residence" was defined as follows:

> "Legal residence" means the permanent fixed place of abode which one intends to be his residence and to return to it despite temporary residences elsewhere, or absences. In determining whether the Defendant was a legal resident of the Leesburg [Florida] area, you may consider whether or not the Defendant intended to reside indefinitely in St. Croix or St. Maarten, or whether or not he intended to remain in St. Croix or St. Maarten permanently or whether he intended to return from those islands to the Leesburg area.

We find this instruction proper and must assume that the jury evaluated the evidence in light of the court's statement of the law. The verdicts of guilt then necessarily encompassed a finding that defendant was a legal resident of the Middle District, and we conclude that there is sufficient evidence in the record to sustain that finding.

Stated briefly, the record shows that defendant and his wife lived in Cocoa Beach, Florida from the time of their marriage in 1958 until 1962 or 1963 when they moved to the Bahamas. They lived together in an apartment in Freeport until December 1964, at which time they were divorced. Defendant apparently remained in Freeport for a period of time after the divorce and built a frame office and living accommodations there.[8] There was testimony at trial that

---

8. Defendant does not now claim to have been a resident of the Bahamas during this period of time.

defendant and his brother performed as musicians in several Florida cities during 1967 and early 1968. Sometime during the summer of 1969, defendant went to St. Croix, Virgin Islands, to do some carpentry work as a subcontractor on a condominium housing project.[9] In October 1969 defendant began another subcontracting job in St. Maarten, Netherlands Antilles, and apparently moved there in early 1970.[10] In March 1971 defendant returned to St. Croix and, in September or October of that same year, returned to Florida. During the years 1969 and 1970, defendant maintained bank accounts in Cocoa Beach and Leesburg, Florida, and received a series of loans from those same institutions. Significantly, at the same time defendant initially began working in St. Croix, he purchased a plot of land as a home site outside Leesburg.[11] Defendant's brother began actual construction of the home and an account was established in Leesburg in the brother's name to provide the necessary financing. Defendant stated that he built the home "because I always wanted to . . . I knew I was coming back from the Islands to retire."

On the basis of the evidence presented, the jury could have concluded that defendant's presence in the islands was merely temporary and that he had no intention of remaining there permanently. Defendant's own statement underscores this very conclusion. We therefore hold that the defendant had a legal duty to make a return for the years 1969 and 1970 in what the jury found to be the district of his legal residence, the Middle District of Florida.[12]

Defendant also argues that he had no tax obligation to the United States for the year 1969 and consequently was not required to make a return in the United States for that year. Although he concedes that United States citizens, whether living at home or abroad, are taxable by the United States on their worldwide income, defendant claims that in his case an exception to that general principle is provided by section 28(a) of the Revised Organic Act of the Virgin Islands. That statute provides that "inhabitants of the Virgin Islands . . . shall satisfy their income tax obligation under applicable taxing statutes of the United States by paying their tax . . . into the treasury of the Virgin Islands." 48 U.S.C. § 1642. It further states that the term "inhabitants of the Virgin Islands . . . shall include all persons whose *permanent residence* is in the Virgin Islands." *Id.* (emphasis added). Defendant's position is that he was an inhabitant of the Virgin Islands in 1969 and thus had a tax obligation to the Virgin Islands rather than to the United States.[13] *See Vitco, Inc. v. Government of the Virgin Islands,* 560 F.2d 180, 181–83 & n.4 (3d Cir. 1977).

■ The Internal Revenue Code of the United States was made applicable in the Virgin Islands through the Naval Service Appropriation Act of 1922:

The income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in the Virgin Islands of the United States, except that

9. The record is not clear as to the precise date of defendant's arrival in St. Croix. Ms. Margaret Kiner, a former employee of the construction concern with which defendant was affiliated, testified that defendant was on St. Croix when she arrived there in August 1969.

10. Ms. Kiner testified that she left the Virgin Islands for St. Maarten in March 1970 and that defendant left "just before" that time.

11. The lot was located in a real estate development known as the "Flying Baron Estates." Defendant contributed substantial sums of money to the individual promoters during the initial stages of development in 1969 and 1970.

12. Defendant first asserted his claim of improper venue in a motion to dismiss at the close of the government's case. In light of our holding that the government's proof was such that a reasonable jury could have concluded that defendant was a legal resident of Florida, it becomes obvious that the court's denial of the motion was not clearly erroneous. We need not address the government's argument that defendant waived his right to contest venue by not raising an objection prior to trial.

13. It is undisputed that defendant did not file a return or pay taxes in the Virgin Islands in 1969 or 1970.

the proceeds of such taxes shall be paid into the treasuries of said islands.

48 U.S.C. § 1397 (1964). This statute effectively established separate and distinct taxing jurisdictions in the United States and the Virgin Islands, *Dudley v. Commissioner,* 258 F.2d 182, 183–85 (3d Cir. 1958), although the Virgin Islands tax is a "mirror image" of the United States Code. *Vitco, Inc. v. Government of the Virgin Islands,* 560 F.2d at 181–82. And to assist the Islands in their quest for economic self-sufficiency, the Congress determined as a matter of policy, and directed in 48 U.S.C. § 1642, that the Islands should collect the tax on all income of its "permanent residents." The statute does not undertake to define the term "permanent resident." We conclude, however, that Congress must have intended that permanent residence for the purpose of 48 U.S.C. § 1642 involve nothing less than "legal residence" as that term is used in the Internal Revenue Code. As previously mentioned, the Code requires a United States citizen to make his return in the internal revenue district of his "legal residence." 26 U.S.C. § 6091(b)(1)(A)(i). To apply any lesser standard in determining the necessity of making a return and paying taxes to the Virgin Islands would circumvent the requirements of section 6091. We cannot ascribe such an unreasonable intention to Congress' passage of 48 U.S.C. § 1642.

We have held that there was sufficient evidence presented in this case for a reasonable jury to have concluded that defendant's legal residence for 1969 was the Middle District of Florida. Consequently, under our interpretation of 48 U.S.C. § 1642, any argument that defendant was a permanent resident of the Virgin Islands that year is foreclosed. His tax obligation in 1969 was to the United States and a return should have been made here.[14]

14. Even if we were able to decide that defendant could have been at one time a "legal resident" of Florida and a "permanent resident" of the Virgin Islands, there was no proof of residence in St. Croix on December 31, 1969. *See* Rev.Rul. 60–291, 1960–2 Cum. Bull. 407.

As to the additional grounds for reversal raised by the defendant, we have considered each of them and are unable to find any basis for relief.

AFFIRMED.