UNITED STATES of America, Plaintiff-Appellee,

v.

Pascal DiJAMES, Defendant-Appellant.

No. 83–8014.

United States Court of Appeals, Eleventh Circuit.

May 3, 1984.

Rehearing and Rehearing En Banc Denied July 5, 1984.

John W. Stokes, Jr., Decatur, Ga., David W. Elbaor, Washington, D.C., for defendant-appellant.

S. Lark Ingram, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before RONEY, FAY and CLARK, Circuit Judges.

FAY, Circuit Judge:

Following a jury trial in the Northern District of Georgia, appellant, Pascal DiJames, was convicted of willfully failing to file a Labor Department trusteeship report, in violation of 29 U.S.C. §§ 461(a) and (c) (1980). Although we find sufficient evidence to sustain the conviction for willful failure to file the trusteeship report, we reverse the conviction because venue was proper in this case only in the District of Columbia, not in the Northern District of Georgia.[1]

FACTS

The Tile, Marble, Terrazzo Finishers and Shopmen International Union, AFL–CIO ("International Union") is a craft union representing about 7,000 members, in 120 chapters throughout the United States and Canada, who make their living by assisting tile setters. Local Union 167, located in Atlanta, Georgia is a local chapter of the International Union. During all of the pro-

---

1. Appellant raised four additional issues in this appeal:

 a) Whether the district court erred in denying the appellant the right to present expert opinion on the issue of the existence of a trusteeship;

 b) Whether the district court erred in admitting into evidence unauthenticated summary charts;

 c) Whether the district court erred in instructing the jury on the meaning of the word "autonomy"; and

 d) Whether the district court erred in its instructions to the jury on the elements of the offense.

We do not reach the merits of these contentions since it is unknown whether a retrial will occur. If such does take place it will be before a different trial judge in a different area of the country. All of these matters would be tested by "an abuse of discretion" standard and may or may not be handled in the same manner.

ceedings involved in this case appellant was the president of the International Union.

In March, 1977, Ellis Elders, the business agent of Local Union 167, wrote DiJames and asked him if the International Union could help the local get better organized and negotiate new contracts. DiJames agreed and sent Frank Iarrabino, a vice president of the International Union, to study the situation and to determine what assistance the local union needed. Iarrabino helped the local union obtain a new contract with substantial wage increases. In spite of the new contract Local Union 167 continued having problems. Appellant decided that they needed a full-time supervisor and he appointed James Lynch, a member of the Iron Workers Local Union 387, for this job. The International Union paid Lynch his salary of $1,100 a month. After two and one half months as supervisor, Lynch resigned.

Since DiJames did not think that the local union was able to function on its own he appointed Ray Smith to be the next supervisor. Smith held the position from May, 1978 until May, 1980. As supervisor he had full control of the local union. During his term, union membership increased from 30 to 180 members. It began holding regular meetings and passed a constitution and by-laws. He also started a Southern District Council in an attempt to better organize and strengthen the union. The Council consisted of Local Union 167 and four other locals: Macon, Augusta, Savannah, and Greenville. While he was supervisor, Smith "stayed in touch with [DiJames] ... if [Smith] needed some information or something [he] would call [DiJames] on the phone." R. Vol. IV. at 397.

On November 26, 1979, Smith wrote DiJames a letter requesting that he send someone from the International Union to explain to the local union's members why they were still under supervision and when the supervision would end. R. Vol. IV. at 400. On December 10, 1979, DiJames wrote him back and advised him that Local Union 167 would continue under the supervision of the International Union until June, 1980. R.Vol. IV. at 402. If the local union had good attendance at its meetings for the next six months the International Union would no longer have to supervise it and the local union could hold an election to select its own officers. *Id.*

On June 20, 1980, after being refused the right to see the union books on several occasions, members of Local Union 167 went to the Department of Labor for help. They inquired if the International Union had filed the required trusteeship papers with the government, indicating that the local was under its supervision. The members were advised that there were no papers on file so they filed a formal complaint. After its investigation the Labor Department concluded that the International Union had imposed a trusteeship over the local union since May, 1978. R. Vol. V. at 540. They further concluded that the International Union had not followed the proper procedures nor filed the required reports. *Id.*

Ray Smith resigned in June, 1980 and DiJames once more appointed a supervisor. Jerry Carter held the position from June, 1980 until February, 1981, when the local union finally elected its own officers. At this time the union also established its own bank account and took over management of its own affairs. The local's books showed a deficit of $11,564.84.

Mr. DiJames was indicted by a federal grand jury in 1982 for violations of the federal labor laws relating to union trusteeships. On November 12, 1982, a jury convicted Pascal DiJames of willful failure to file the required trusteeship reports. The jury acquitted him of unlawfully transferring funds from the local union to the International Union. DiJames is appealing this judgment of conviction.

## APPROPRIATE VENUE

Appellant was convicted in the Northern District of Georgia of willfully failing to file with the Secretary of Labor the trusteeship reports required by 29 U.S.C. §§ 461(a) and (c) (1980) when the International Union took over the operation of Local Union 167. He asserts that his con-

viction should be reversed because the trial court incorrectly found that venue in this case was proper in the Northern District of Georgia. Since the required trusteeship reports must be filed with the Secretary of Labor in Washington, D.C., and the alleged offense was failure to file these reports appellant contends that the only proper venue for this action was Washington, D.C. We agree.

This case involves the provisions of the Labor Management Reporting and Disclosure Act, 29 U.S.C. §§ 401–531 (1980) ("the Act"). The principal purpose of the Act is to assure that the union's rank and file participate fully in their union's affairs. *American Federation of Musicians v. Wittstein*, 379 U.S. 171, 85 S.Ct. 300, 13 L.Ed.2d 214 (1964). Union trusteeships, significant devices by which parent unions seek to control subordinate unions, are one of the aspects of union affairs regulated by the Act. Congress enacted the trusteeship provisions of the Act to ensure order within labor organizations and to prevent corruption and mismanagement of union funds by its leaders. To accomplish this goal the Act requires any parent union that takes over a subordinate labor union by imposition of a trusteeship to file a detailed report with the Secretary of Labor within thirty days after the imposition of the trusteeship. 29 U.S.C. § 461(a).[2] Appellant

was criminally charged with failure to file this report. 29 U.S.C. § 461(c).

■ Article III, section 2, clause 3 of the United States Constitution provides that "The Trial of all Crimes, except in Cases of Impeachment, shall be ... held in the State where the said Crimes shall have been committed...." The Sixth Amendment of the United States Constitution expands this rule and expresses it as a right of the accused by providing that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed...." The Federal Rules of Criminal Procedure also help to preserve this important constitutional right by providing that "[e]xcept as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed." Fed.R.Crim.P. 18. Because of this important constitutional right to be tried by a jury of your vicinage, Fed.R. Crim.P. 21(a) "conditions a change of venue ... upon the defendant's request therefor. Absent the request, a change of venue may not be ordered." *United States v. Abbott Laboratories*, 505 F.2d 565, 572 (4th Cir. 1974) (citation omitted), *cert. denied*, 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 671 (1975). A defendant cannot be forced to accept a change of venue against his will. *Id.* at 572.[3]

2. Section 461(a) states:
  Every labor organization which has or assumes trusteeship over any subordinate labor organization shall file with the Secretary within thirty days after September 14, 1959 or the imposition of any such trusteeship, and semiannually thereafter, a report, signed by its president and treasurer or corresponding principal officers, as well as by the trustees of such subordinate labor organization, containing the following information: (1) the name and address of the subordinate organization; (2) the date of establishing the trusteeship; (3) a detailed statement of the reason or reasons for establishing or continuing the trusteeship; and (4) the nature and extent of participation by the membership of the subordinate organization in the selection of delegates to represent such organization in regular or special conventions or other policy-determining bodies and in the election of officers of the labor organization which has assumed trusteeship

over such subordinate organization. The initial report shall also include a full and complete account of the financial condition of such subordinate organization as of the time trusteeship was assumed over it. During the continuance of a trusteeship the labor organization which has assumed trusteeship over a subordinate labor organization shall file on behalf of the subordinate labor organization the annual financial report required by section 431(b) of this title signed by the president and treasurer or corresponding principal officers of the labor organization which has assumed such trusteeship and the trustees of the subordinate labor organization.

3. Although the right to be tried in the state and district where the crime was alleged to have been committed may be waived voluntarily by the defendant, it is clear that such is not the case before us. *United States v. Marcello*, 423 F.2d 993, 1001–06 (5th Cir.) *cert. denied*, 398 U.S. 959, 90 S.Ct. 2172, 26 L.Ed.2d 543 (1970).

■ There are numerous policy reasons for these venue provisions. In order that defendants can be tried before a well-informed jury, the Sixth Amendment directs that the trial be held among those who know the local conditions surrounding the criminal acts. Those jurors should then be able to draw the most accurate inferences from the evidence presented at trial. The venue provisions also seek to avoid the prejudice to a defendant's case that might result from facing trial in a place where it would be difficult for him to obtain witnesses in preparation for trial. Lastly, since most crimes usually take place in the district where the defendant resides, the venue provisions try to reduce the difficulties to the defendant that would be caused by a trial at a distance from his home and friends. *United States v. Cores,* 356 U.S. 405, 410, 78 S.Ct. 875, 879, 2 L.Ed.2d 873 (1958). Congress has the statutory power to specify where a matter should be prosecuted by the executive branch. *Travis v. United States,* 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961). Yet in analyzing any particular statutory scheme, courts must be guided by the fundamental policies behind the Sixth Amendment and the venue provisions. *United States v. Johnson,* 323 U.S. 273, 275, 65 S.Ct. 249, 250, 89 L.Ed. 236 (1944).

In order to find where venue was proper in this case we must first determine where the crime was committed. The essence of the offense charged in this case is DiJames' failure to file a required trusteeship report. he Sureme Court has consistently held that "where the crime charged is a failure to do a legally required act, the place fixed for performance fixes the situs of the crime." *Johnston v. United States,* 351 U.S. 215, 220, 76 S.Ct. 739, 742, 100 L.Ed. 1097 (1956) (footnote omitted). In *Johnston* conscientious objectors were ordered by their local draft boards to report for civilian work at state hospitals located in judicial districts other than those in which they resided and were registered.

They refused to report for work at the designated places and were indicted for violation of the Universal Military Training and Service Act. Since the place fixed for performance determines the situs of the crime, the Court held that venue was proper only in the judicial districts where the civilian work was to be performed and not in the judicial districts in which they resided and were registered. *Id. See also, Travis v. United States,* 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961) (venue for prosecution for false affidavits filed with the NLRB only proper in the District of Columbia where the affidavits had to be filed with the Board); *Rumely v. McCarthy,* 250 U.S. 283, 39 S.Ct. 483, 63 L.Ed. 983 (1919) (venue for prosecution for failure to report to the federal Alien Property Custodian lay only in the District of Columbia, where the Custodian was located); *United States v. Lombardo,* 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897 (1916) (venue for prosecution for failure to file statement with federal Commissioner General of Immigration only proper in District of Columbia where the Commissioner General is located); *United States v. Calhoun,* 566 F.2d 969, 973 (5th Cir.1978) [4] (Crime of failure to file an income tax return committed in the judicial district in which the return was to be filed).

■ There is no doubt in this case that the place fixed for performance of the legally required act was Washington, D.C. The statute itself designates Washington as the place for performance since Section 461(a) directs that the report be filed with the Secretary of Labor and he is located in the District of Columbia. The Labor Secretary's published regulations further direct that any labor organization imposing a trusteeship over a local union must file the required reports "with the Director, Office of Labor-Management Standards Enforcement, Department of Labor, Washington, D.C. 20216." 29 C.F.R. §§ 408.2–408.4 (1982). In addition the government's print-

4. Decisions of the former Fifth Circuit rendered prior to Oct. 1, 1981, are binding upon this court unless and until they are overruled by the Eleventh Circuit sitting *en banc. Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

ed form used for the report instructs the users to complete the form in duplicate and to file it "with the Office of Labor Management Standards Enforcement, U.S. Department of Labor, Washington, D.C. 20216." R. Vol. VI. at 691. The governing statute, regulations and form clearly designate only Washington, D.C. as the appropriate place for filing the report. Prosecution for failure to file this report can only take place in the District of Columbia.

■ The government tried to show through a witness that duplicate files of the report are kept in the area offices of the Department of Labor and that the Department's policy is that field offices are authorized to receive the reports. R. Vol. VI at 689–690. Such may be the Labor Department's policy but we cannot penalize the appellant for the government's failure to follow its own statutes and directives. If we accepted this theory government agencies could define at whim the locus of criminal conduct without regard to published statutes and without notice to those later prosecuted under the statutes. A defendant's Sixth Amendment right would then be determined "solely by the arbitrary operation of a government agency which chooses to disregard its own published regulations." *United States v. Flaxman,* 304 F.Supp. 1301, 1304 (S.D.N.Y.1969).

The district court erroneously relied on *Wirtz v. Cascade Employer's Ass'n, Inc.,* 219 F.Supp. 84 (D.D.C.1963) in finding that venue was proper in the Northern District of Georgia. The *Wirtz* case involved the failure of two corporations to file a report required by Section 433[5] of the Act. Construing Section 440, the civil venue provision of the Act, the court concluded that failure to file the required report under Section 433 was not a violation which occurred in the District of Columbia. *Id.* at 87. Section 440 authorizes the Secretary of

Labor to bring a civil action for violation of any section of the Act. The Secretary may bring this action "in the district court of the United States where the violation occurred or, at the option of the parties, in the United States District Court for the District of Columbia." 29 U.S.C. § 440 (1980). The court analyzed this language and found that if venue were proper only in the District of Columbia, where the report had to be filed, the wording of the statute would be redundant. Such an interpretation would make the provision for alternative venue in the District of Columbia by mutual consent to be just surplusage since it would require the statute to read: "any such action may be brought in the District of Columbia, or, at the option of the parties, in the District of Columbia." *Id.*

■ We agree with the court in *Wirtz* that such could not have been Congress' intent but Section 440 is simply not applicable to this case.[6] Section 440 by its explicit language only applies to civil enforcement actions brought by the Secretary of Labor. The *Wirtz* court stated that the only issue before that court was "whether Congress [in Section 440], intended that venue would lie in the District of Columbia for a *civil action* charging a failure to file reports and seeking an injunction requiring such filing." *Id.* (emphasis added). We cannot apply the venue provision for a civil action to this criminal case. Venue in a civil action is a matter of convenience but the right of a defendant in a criminal case to be tried where the alleged crime was committed is a constitutional right. *See, United States v. Stratton,* 649 F.2d 1066 (5th Cir. 1981). Venue in this case was proper only in the District of Columbia.

## SUFFICIENCY OF THE EVIDENCE

■ Appellant also asserted that the evidence presented at trial was insufficient to

---

**5.** Section 433, 29 U.S.C. § 433 (1980), deals with the reports required to be filed by employers pertaining to payments, loans, promises, agreements or arrangements by the employer with any member of a labor organization.

**6.** It is important also to note that, unlike the Department of Labor employees in this case, the Department of Labor employees in *Wirtz* told the corporate defendants that they could file the reports in the nearby Department of Labor field offices.

support a conviction under 29 U.S.C. §§ 461(a) and (c). We find that the government presented sufficient evidence at trial for a jury to find that appellant placed Local Union 167 under supervision and that he willfully failed to file the required reports.[7]

In order to prove a violation of 29 U.S.C. §§ 461(a) and (c) the government had to prove that Local 167 was a "subordinate labor organization" of the International Union and that the International Union assumed a trusteeship over the local union. As a result of this trusteeship, the corresponding principal officer of the International Union was required to file a trusteeship report with the Secretary of Labor within thirty days of the imposition of the trusteeship and every six months thereafter. Thus, the government had to prove that between May, 1978, and June 2, 1981, appellant willfully failed to file such a report.

The government carried its burden of proof in this case. It proved that DiJames removed Elders, the business manager of Local Union 167, from office and consecutively appointed supervisors who administered the affairs of the local chapter, including the financial matters. R. Vol. V. at 572. Appellant appointed James Lynch, R. Vol. IV. at 364, Ray Smith, R. Vol. IV. at 367, and Jerry Carter, R. Vol. V. at 613–615. These three supervisors reported directly to DiJames and not to the members. R. Vol. IV. at 406; Vol. V. at 613, 618, 628, and Vol. VI. at 709–10. They were continuously calling him on the phone for whatever information they needed. R. Vol. IV at 397. DiJames himself told the local union that his supervisor would continue running the local until he thought they were able to elect their own officers. R. Vol. IV. at 402. The evidence was sufficient for a jury to conclude that the International Union had imposed a trusteeship over Local Union 167. *See e.g., Benda v. Grand Lodge of Inter. Ass'n,* 584 F.2d 308 (9th Cir.1978), *cert. denied,* 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979).

29 U.S.C. § 461 requires that an initial trusteeship report, commonly referred to as an LM–15, must be filed within thirty days of the imposition of any trusteeship and subsequent reports must be filed every six months. There is no doubt that DiJames knew that he had to file trusteeship reports with the Labor Department. He even told Ray Smith, soon after he appointed Smith supervisor, that he wanted all the required Labor Department reports filed. R. Vol. IV at 392. There was sufficient evidence for a jury to conclude that the International Union was using the Local to augment its own power through the trusteeship and that it never reported to Washington that the local union was under its supervision.

REVERSED and REMANDED.

RONEY, Circuit Judge, dissenting:

I respectfully dissent from the court's holding that this conviction must be reversed because of improper venue.

The trial court found as a fact that there is a field office of the Labor-Management Service Administration (LMSA) in Atlanta, Georgia, where the trustee reports could have been filed. Upon filing the reports in Atlanta, the defendant would have fully complied with the law. Thus, the fact is that the trusteeship reports could have been filed either in the District of Columbia or in the Northern District of Georgia. The failure of the defendant to file in either place was the crime he committed. Where an act can be accomplished in either of two places and the failure to act is the punishable offense, I would hold that venue for the criminal trial would lie in either jurisdiction where defendant could have complied with the law.

As I understand it, the court's decision does not quarrel with this principle. The cases relied on in the opinion involved only one place fixed for the performance of the required act. The court cites no case, nor has any case been cited by the parties,

---

**7.** Unlike the issues stated in footnote 1 we reach the sufficiency of the evidence issue because of the possibility of a retrial.

where there are alternative places fixed for performance of the legally required act. The court simply holds that the only statutory place for filing is Washington, D.C., and therefore the offense could be committed only there. In my judgment, however, agency regulations and practices must be considered in making a determination of this kind. Taking those into consideration, there are two alternative places where defendant could have performed the legally required act. The requirement of *Johnston v. United States,* 351 U.S. 215, 220, 76 S.Ct. 739, 742, 100 L.Ed. 1097 (1956), that for a crime of failure to do a legally required act, "the place fixed for its performance fixes the situs of the crime," logically fixes the situs of the crime at two points, where there are two places fixed for performance. The decision here is contrary to the premise of *Johnston.*

Although this defendant happens to live near the District of Columbia, as to others in many parts of the United States, such as California, Hawaii, or Alaska for instance, most of the policy reasons given in the court's opinion for the venue provisions will be substantially thwarted with the strict application of the decision that the only constitutional venue for this crime is in the District of Columbia.